# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | |
|---|---|
| **BRENDA SHELBY WILSON,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | Civil Action No. |
| **CAROLYN W. COLVIN** ) | **2:13-CV-1137-MHH** |
| **Acting Commissioner of the** ) | |
| **Social Security Administration,** ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

Pursuant to 42 U.S.C. § 405(g), claimant Brenda Wilson seeks judicial review of a final adverse decision of the Commissioner of Social Security. The Commissioner affirmed the decision of the Administrative Law Judge ("ALJ") who denied Ms. Wilson's claim for a period of disability and disability insurance benefits. Because substantial evidence supports the ALJ's decision, the Court affirms the Commissioner's ruling.

## STANDARD OF REVIEW:

The scope of review in this matter is limited. "When, as in this case, the ALJ denies benefits and the Appeals Council denies review," the Court "review[s] the ALJ's 'factual findings with deference' and [his] 'legal conclusions with close

scrutiny.'" *Riggs v. Comm'r of Soc. Sec.*, 522 Fed. Appx. 509, 510-11 (11th Cir. 2013) (quoting *Doughty v. Apfel,* 245 F.3d 1274, 1278 (11th Cir. 2001)).

The Court must determine whether there is substantial evidence in the record to support the ALJ's findings. "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). In making this evaluation, the Court may not "reweigh the evidence or decide the facts anew," and the Court must "defer to the ALJ's decision if it is supported by substantial evidence even if the evidence may preponderate against it." *Gaskin v. Comm'r of Soc. Sec.*, 533 Fed. Appx. 929, 930 (11th Cir. 2013).

With respect to the ALJ's legal conclusions, the Court must determine whether the ALJ applied the correct legal standards. If the Court finds an error in the ALJ's application of the law, or if the Court finds that the ALJ failed to provide sufficient reasoning to demonstrate that the ALJ conducted a proper legal analysis, then the Court must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

**PROCEDURAL AND FACTUAL BACKGROUND:**

On January 3, 2011, Ms. Wilson applied for a period of disability and disability insurance benefits under Title II of the Social Security Act.  (R. 123-124). The Social Security Administration denied Ms. Wilson's application on March 10, 2011.  (R. 71).  At Ms. Wilson's request, on November 21, 2012, an Administrative Law Judge conducted a hearing concerning Ms. Wilson's application.  (R. 42).  Ms. Wilson and an impartial vocational expert testified at the hearing.  (R. 40-69).  At the time of her hearing, Ms. Wilson was 48 years old, and she had completed one semester of college.  (R. 45).  Ms. Wilson has a high school education. (R. 45, 147).  Her past relevant work experience is as a customer service manager and a security guard. (R. 46, 63-64, 147, 164-167).

On December 19, 2012, the ALJ denied Ms. Wilson's request for disability benefits, concluding that Ms. Wilson did not have an impairment or a combination of impairments listed in, or medically equal to one listed in, the Regulations. (R. 24-39).  The ALJ found that Ms. Wilson had not "engaged in substantial gainful activity since January 18, 2010, the alleged onset date."[1]  (R. 29).  In addition, the ALJ concluded that Ms. Wilson has "the following severe impairments:

---

[1] The Court reviewed not only the ALJ's decision, but also Ms. Wilson's medical records.  The Court finds that the ALJ's description of Ms. Wilson's medical evaluations is accurate.  In a number of instances in this opinion, the Court has provided citations not only to the ALJ's decision but also to the underlying records to illustrate that there is no discrepancy between the two.

3

depression, post-traumatic stress disorder, and an anxiety disorder." (*Id.*). The ALJ stated, "these impairments are severe because the evidence [] indicated that they caused [Ms. Wilson] more than minimal work-related functional limitations for at least twelve months." (*Id.*). The ALJ also found that Ms. Wilson has the following non-severe impairments: hypertension, osteoarthritis, diabetes mellitus, reflux disease, hyperlipidemia, and obesity. (*Id.*). Nevertheless, the ALJ concluded that Ms. Wilson does not have an impairment or combination of impairments that meets, or medically equals, the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Specifically, the ALJ noted that:

> [Ms. Wilson's] mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04 and 12.06. In making this finding, the undersigned considered whether the 'paragraph B' criteria are satisfied. To satisfy the 'paragraph B' criteria, [Ms. Wilson's] . . . mental impairments must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. . . . [2] Because [Ms. Wilson's] mental impairments do not cause at least two 'marked' limitations or one 'marked' limitation and 'repeated' episodes of decompensation, each of extended duration, the 'paragraph B' criteria are not satisfied.

---

[2] "A marked limitation means more than moderate but less than extreme. Repeated episodes of decompensation, each of extended duration, means three episodes within a year, or an average of every 4 months, each lasting at least two weeks." (R. 30).

4

(R. 30).  In addition, the ALJ did not find evidence that Ms. Wilson suffered from a "residual disease process." (*Id.*).  Because Ms. Wilson did not suffer from a residual disease process, her mental impairments did not meet "paragraph C" criteria. (*Id.*).  Based on these factual findings, the ALJ concluded that Ms. Wilson had the "residual functional capacity to perform a full range of work at all exertional levels . . . limited to the performance of simple, routine, and repetitive tasks in a work environment where changes occur on no more than an occasional basis, and where there is no greater than occasional interaction with coworkers or the general public."  (R. 31).

In making this RFC determination, the ALJ first considered Ms. Wilson's mental health treatment record and found that Ms. Wilson's mental health treatment providers suggested that she did not have any "significant ongoing functional restrictions" due to depression or anxiety.  (R. 32).   In support of that conclusion, the ALJ reviewed various treatment notes and the opinions of various medical sources.  For example, treatment notes from Trinity Medical Center indicated that in 2008 and 2009, Ms. Wilson was evaluated by doctors "intermittently" who treated her "intermittently" with medication management. (R. 31, 258-273).   In January 2010, Ms. Wilson's depression and anxiety became more severe after her mother died.  In response, her doctors "prescribed additional medication."  (R. 31, 50).  The ALJ examined medical records from 2011, which

5

indicated that Ms. Wilson reported to her treatment providers that she "'fe[lt] mostly normal at this time;' was doing 'extremely well lately;' and that medication management 'ha[d] done a world of difference for her depression and anxiety.'" (R. 31, 258-273).

In February of 2012, Ms. Wilson's treatment providers diagnosed her with post-traumatic stress disorder; however, they noted that Ms. Wilson "was doing well, and [we] offered [her] access to social work services." (R. 32, 334). June 2012 treatment notes indicate that Ms. Wilson's anxiety and depression were "very well controlled" and that Ms. Wilson reported that she was "happy all the time." (R. 365). In September 2012, Ms. Wilson began treatment at Chilton Shelby Mental Health Center. (R. 376). During her visit, counselors recommended individual and group therapy. (*Id.*). The providers noted that Ms. Wilson's global function score was 53, and that she had "moderate difficulty in social, occupational, or school functioning." (R. 32, 377).

The ALJ also reviewed the results of a psychological evaluation that Dr. Renee Myers performed on March 7, 2011. (R. 329). Dr. Myers, an independent consultative examiner, found that Ms. Wilson is "capable of interacting with others in a work setting, responding to supervision, and learning new tasks, but due to her acute emotional distress, she does not have the motivation or coping ability to do so." (R. 331-332).

The ALJ assessed the results of a review of Ms. Wilson's records conducted by Dr. Melissa Jackson, a State agency doctor.  Dr. Jackson conducted a review of Ms. Wilson's records in March 2011.  (R. 310-322; 324-327).  Dr. Jackson concluded that Ms. Wilson was not significantly limited or only moderately limited in her understanding and memory; sustained concentration and persistence; social interaction; and adaptation.  (R. 324-325).  Dr. Jackson opined that Ms. Wilson was capable of "maintaining attention for two-hour segments on simple tasks" and that Ms. Wilson "would also likely miss 1-2 days [of work] per month dealing with mental health symptoms."  (R. 326).

The ALJ also evaluated Ms. Wilson's testimony regarding her impairments.  (R. 31).  The ALJ determined that Ms. Wilson's allegations of pain and limitation were "less than entirely credible." (*Id*.). The ALJ found that Ms. Wilson's allegations were "partially credible" for the following five reasons:

> . . . [1] doctors provided generally conservative treatment, [that] did not suggest that [Ms.Wilson] had significant ongoing functional limitations, and did not recommend that [Ms. Wilson] avoid working or even performing specific activities of daily living; [2] statements provided by [Ms. Wilson] and Ms. Bell suggest that [Ms. Wilson] has significant mental health issues and that she was experiencing side effects from her medication… [which were] not relayed to [Ms. Wilson]'s treating doctors; [3] medical opinion evidence does not validate the allegations of severe and profound limitation; [4] [Ms. Wilson]'s testimony indicated she had been consistently applying for jobs during the same time

7

>which she claims to have been disabled; and [5] [Ms. Wilson] told her providers in September 2012 that she did not want to work and she was worried that if she worked, it would affect her benefits.

(R. 33).

The ALJ also considered the opinion of a vocational expert (VE) who testified at Ms. Wilson's hearing.  The VE stated that a person of Ms. Wilson's age, education, and work experience with Ms. Wilson's RFC "would be able to perform the requirements of representative occupations such as industrial cleaner, self-service laundry attendant, and machine operator."  (R. 34, 64).

Based on his review of the record, the ALJ found that Ms. Wilson "has the residual functioning capacity to perform a full range of work at all exertional levels . . . [with] certain nonexertional limitations, in that [Ms. Wilson] is limited to the performance of simple, routine and repetitive tasks, in a work environment where changes occur on no more than an occasional basis, and where there is no greater than occasional interaction with coworkers or the general public."  (R. 31).  The ALJ reasoned that Ms. Wilson's ability to perform work at all exertional levels had been:

>. . . compromised by nonexertional limitations. To determine the extent to which these limitations erode the occupational base of unskilled work at all exertional levels, the [ALJ] asked the vocational expert whether jobs exist in the national economy for an individual with [Ms. Wilson]'s age, education, work experience, and residual functional capacity . . . .

> Pursuant to SSR 00-4p, the undersigned has determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles. Based on the testimony of the vocational expert, the undersigned concludes that, considering [Ms. Wilson]'s age, education, work experience, and residual functioning capacity, [Ms. Wilson] is capable of making a successful adjustment to other work that exists in significant numbers in the national economy.

(R. 34). The ALJ found that there are jobs that exist in significant numbers in the national economy that would accommodate Ms. Wilson's limitations. (R. 34). Accordingly, the ALJ determined that Ms. Wilson "is not disabled under sections 216(i) and 223(d) of the Social Security Act." (R. 35).

On April 26, 2013, the ALJ's decision became the final decision of the Commissioner when the Appeals Council refused to review the ALJ's decision. (R. 1). Having exhausted all administrative remedies, Ms. Wilson filed this action for judicial review pursuant to §205(g) of the Social Security Act, 42 U.S.C. §405(g).

**ANALYSIS**:

To be eligible for disability insurance benefits, a claimant must be disabled. *Gaskin*, 533 Fed. App'x at 930. "A claimant is disabled if he is unable to engage in substantial gainful activity by reason of a medically-determinable impairment that can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months." *Id.* (citing 42 U.S.C. §

423(d)(1)(A)).  A claimant must prove that she is disabled.  *Id.* (citing *Ellison v. Barnhart,* 355 F.3d 1272, 1276 (11th Cir. 2003).  To determine whether a claimant is disabled, the Social Security Administration applies a five-step sequential analysis.  *Gaskin*, 533 Fed. App'x at 930.

> This process includes a determination of whether the claimant (1) is unable to engage in substantial gainful activity; (2) has a severe and medically-determinable physical or mental impairment; (3) has such an impairment that meets or equals a Listing and meets the duration requirements; (4) can perform his past relevant work, in the light of his residual functional capacity; and (5) can make an adjustment to other work, in the light of his residual functional capacity, age, education, and work experience.

*Id.* (citation omitted).  "The claimant's residual functional capacity is an assessment, based upon all relevant evidence, of the claimant's ability to do work despite his impairments."  *Id.* (citing *Lewis v. Callahan,* 125 F.3d 1436, 1440 (11th Cir. 1997); 20 C.F.R. § 404.1545(a)(1)).

Ms. Wilson argues that she is entitled to relief from the ALJ's decision because: (1) the ALJ did not give sufficient weight to Dr. Myers's opinion; (2) the ALJ improperly afforded great weight to Dr. Jackson's opinion; (3) the ALJ failed to consider Ms. Wilson's non-exertional impairment of pain and her related testimony; and (4) the ALJ failed to properly consider the impact of poverty on Ms. Wilson's ability to obtain treatment.  These contentions are without merit.

## I.    The ALJ Properly Rejected Dr. Myers's Opinion

Dr. Myers was a one-time examining physician and was not Ms. Wilson's treating physician. Therefore, her opinion is not entitled to deference. *See Denomme v. Comm'r of Soc. Sec.*, 518 Fed. Appx. 875, 879 (11th Cir. 2013) ("The ALJ does not have to defer to the opinion of a physician who conducted a single examination, and who was not a treating physician.") (citing *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987)). Nevertheless, the ALJ still was required to explain the weight she assigned to Dr. Myers's opinion and her rationale for doing so. *See Winschel v. Comm'r of Soc. Sec.,* 631 F.3d 1176, 1179 (11th Cir. 2011) ("[T]he ALJ must state with particularity the weight given to different medical opinions and the reasons therefor.") (citing *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987) (per curiam)). Otherwise, the Court cannot determine whether the ALJ's decision is based upon substantial evidence. *See id.*

In this case, the ALJ clearly articulated her reasons for rejecting Dr. Myers's opinion. The ALJ explained that Dr. Myers's findings were only "partially credible" and contradicted other evidence in the record. (R. 32). For example, the ALJ found that Ms. Wilson's "presentation to Dr. Myers was not consistent with her presentation to any of her treating providers during that time." (R. 33). The ALJ expressly found that medical and testimonial evidence contradicted Dr. Myers's opinion that Ms. Wilson lacked the ability to interact with others in a work

environment and learn new skills due to her acute emotional distress. (R. 33). The ALJ also noted that Dr. Myers's opinions concerning Ms. Wilson's condition were inconsistent with Ms. Wilson's presentations to all of her treating providers during the same period. (R. 33). For example, Dr. Myers noted that Ms. Wilson had not been receiving psychiatric care because she had lost her job and her health insurance. (R. 32). However, treatment records show that Ms. Wilson had been receiving psychiatric care and that treatment providers had been managing Ms. Wilson's medication. (R. 32-33). Because Dr. Myers's opinion is not entitled to deference, and because the ALJ stated with particularity the weight assigned to Dr. Myers's opinion and the reasoning for the weight assigned, substantial evidence supports the ALJ's decision to give little weight to Dr. Myers's opinion.

## II. The ALJ Did Not Err in Finding Dr. Jackson's Opinion Credible and Giving Dr. Jackson's Opinion More Weight Than Dr. Myers's Opinion

Pursuant to 20 C.F.R. § 404.1527(e)(2)(i), the ALJ "must consider findings and other opinions of State agency medical and psychological consultants. . . ." The ALJ compared Dr. Jackson's opinions to the evidence in the record and determined that Dr. Jackson's opinions were more credible than Dr. Myers's opinions. (R. 31). The ALJ explained that Dr. Jackson's conclusions were consistent with the record as whole. For example, the ALJ noted that Ms. Wilson's treatment records indicate that she:

> . . . experienced significant grief, depression, and anxiety following her mother's death in 2011. However, just a few months later, treatment notes indicated that [Ms. Wilson] had improved significantly on medication, was able to engage in a range of activities, had returned to school to pursue her master's degree, and had become engaged to marry. Further, [Ms. Wilson] did not reference any significant ongoing functional restrictions due to her impairments, and nor did any of [her] providers suggest[] the same.

(R. 32).

The ALJ's reasons for assigning greater weight to Dr. Jackson's opinion than Dr. Myers's opinion are "explicit, adequate, and supported by substantial evidence in the record." *Wainwright v. Comm'r of Soc. Sec.*, 2007 WL 708971, at *2 (11th Cir. March 9, 2007) (substantial evidence supported ALJ's decision to accept opinion of State Agency psychologist where the ALJ stated with particularity the reasons for doing so); *see also Osborn v. Barnhart*, 194 Fed. Appx. 654, 668 (11th Cir. 2006) (substantial evidence supported ALJ's decision to credit State Agency physician's evaluation over other medical opinions where the claimant failed to produce any evidence from a medical source indicating the limitations his impairments had on his ability to work and where the State Agency evaluation was supported by other objective evidence). Accordingly, the ALJ did not err in finding Dr. Jackson's opinion more credible than Dr. Myers's opinion.

### III. The ALJ properly considered Ms. Wilson's non-exertional impairment of pain and her related testimony

An ALJ "appl[ies] a three part 'pain standard' when a claimant attempts to establish disability through his or her own testimony of pain or other subjective symptoms." *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). "The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). A claimant's testimony coupled with evidence that meets this standard "is itself sufficient to support a finding of disability." *Id*. (citation omitted).

"If the ALJ decides not to credit a claimant's testimony as to her pain, he must articulate explicit and adequate reasons for doing so." *Foote*, 67 F.3d at 1561-62. If the ALJ does not explicitly state that he found the testimony incredible, "the implication must be so clear as to amount to a specific credibility finding." *Tieniber v. Heckler*, 720 F.2d 1251, 1255 (11th Cir. 1983). Thus, the ALJ need not make his credibility conclusion explicit if it obviously follows from "explicit and adequate reasons." *Foote*, 67 F.3d at 1561-62 (emphasis added).

The ALJ properly applied the three-part pain standard and provided explicit and adequate reasons for discrediting Ms. Wilson's testimony regarding the nature and severity of her pain.  Regarding the pain standard, the ALJ found that Ms. Wilson's underlying medical conditions "could reasonably be expected to cause the alleged symptoms."  (R. 33).  However, the ALJ found that Ms. Wilson's "statements concerning the intensity, persistence and limiting effects of th[ose] symptoms [were] not entirely credible for the reasons explained in [the ALJ's] decision." (R. 33).

To make a determination of a claimant's credibility, the ALJ may consider evidence in the record regarding: a claimant's daily activities, types and dosages of medications and the frequency with which a claimant sought medical treatment for his conditions or complained of such symptoms on his visits to doctors.  *Dyer v. Barnhart*, 395 F.3d 1208, 1212 (11th Cir. 2005).  The ALJ determined that Ms. Wilson's testimony was "partially credible" based on the following factors: (1) Ms. Wilson's "conservative treatment" history, and treatment notes from previous medical providers that did not suggest Ms. Wilson had "significant ongoing functional limitations"; (2) Ms. Wilson's failure to relay mental health limitations or side effects from medication to her doctors; (3) Dr. Myers's treatment notes that indicated Ms. Wilson's concern that if she worked, her benefits would be impacted; (4) inconsistencies between Ms. Wilson's statements that she had not

15

received psychiatric treatment due to lack of insurance but treatment records indicating that she was "receiving such treatment during that period of time"; and (5) treatment notes from 2011 noting that after consistently taking her medication for six months, Ms. Wilson was "doing extremely well" and her indication that the medication "ha[d] done a world of difference for her depression and anxiety." (R. 32-33). Substantial evidence supports the ALJ's credibility finding. *See e.g.*, *Petteway v. Comm'r of Soc. Sec.*, 353 Fed. Appx. 287 (11th Cir. 2009) (substantial evidence supported ALJ's determination that the claimant's subjective allegations were not credible where the claimant saw improvement after prescribed injections and medical expert testimony and reviewing physician opinions indicating the pain level claimed was inconsistent with the medical evidence on record); *Carman v. Astrue*, 352 Fed. App'x 406, 408 (11th Cir. 2009) ("The ALJ articulated various inconsistencies in [the claimant's] evidence that a reasonable person could conclude supported the ALJ's finding that [the claimant's] subjective complaints of pain were not entirely credible.").

### IV. The ALJ Did Not Err in Failing to Consider the Impact of Poverty on Ms. Wilson's Ability to Obtain Treatment

The Eleventh Circuit has recognized that "if one's disability could be cured by certain treatment, yet treatment is not financially available, then a condition which is disabling in fact continues to be disabling in law." *Belle v. Barnhart*, 129 Fed. Appx. 558, 560 n.1 (11th Cir. 2005) (citing *Dawkins v. Bowen*, 848 F.2d

1211, 1213 (11th Cir. 1988)). Ms. Wilson's argument that the ALJ failed to consider the impact of her poverty on her ability to obtain treatment fails for two reasons. First, Ms. Wilson has not demonstrated how her poverty prevented her from receiving or obtaining treatment. In fact, the record suggests that after she lost her health insurance, Ms. Wilson transferred her treatment from Trinity to Chilton/Shelby Mental Health Center. (R. 376). Additionally, during her hearing, Ms. Wilson testified that she took a number of medications, and she did not indicate that she could not afford any of her prescribed treatment. (R. 54). Therefore, Ms. Wilson has not demonstrated and the record does not reflect that Ms. Wilson was unable to obtain treatment or prescribed medication due to her poverty. Second, even if Ms. Wilson were unable to afford her treatment, the ALJ did not base his decision on a finding of noncompliance. Therefore, the ALJ did not err in failing to consider any purported noncompliance. *See Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003) (ALJ's failure to consider claimant's ability to afford medication was not in error because the ALJ did not significantly base his decision that the claimant was not disabled on a finding of noncompliance with prescribed treatment).

**CONCLUSION**:

Consistent with the foregoing, the Court concludes the ALJ's decision was based upon substantial evidence and consistent with applicable legal standards. Accordingly, the decision of the Commissioner is AFFIRMED.

**DONE** and **ORDERED** this August 28, 2014.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE